FILED
2015 Jan-13  PM 02:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| **KRISTOPHER BILLINGSLEY,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| **v.** ] | **Case No.:  1:13-CV-1337-VEH** |
| ] | |
| **WILLIE ORR,** ] | |
| ] | |
| **Defendant.** ] | |

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff Kristopher Billingsley ("Mr. Billingsley") initiated this civil rights

case on July 18, 2013, against Defendant Willie Orr ("Officer Orr"). (Doc. 1). Mr.

Billingsley complains about how Officer Orr treated him during a law enforcement

incident which occurred on or about June 1, 2012. (Doc. 1 at 3 ¶ 10). Mr.

Billingsley's complaint contains one federal count and three other counts arising

under Alabama law, all of which appear to be brought against Officer Orr solely in

his individual capacity.[1]

---

[1]  A § 1983 claim against a person in his official capacity seeks to impose liability on the
entity which he represents, and not on him personally. *See, e.g., Welch v. Laney*, 57 F.3d 1004, 1008
(11th Cir. 1995) ("Welch's action against the Sheriff and Chief Deputy Sheriff in their official
capacities imposes liability on the entity they represent, and not on them as individuals." (citing
*Brandon v. Holt*, 469 U.S. 464, 471-72, 105 S. Ct. 873, 877-78, 83 L. Ed. 2d 878 (1985))). As the
Eleventh Circuit has explained the distinctions between these two capacities in more detail:

"Personal-capacity suits seek to impose personal liability upon a government

Count One is for deprivation of civil rights pursuant to 42 U.S.C. § 1983. More specifically, Mr. Billingsley contends that Officer Orr subjected him to "an unreasonable search and seizure as there existed no valid and supportable probable cause or reasonable suspicion that [he] had committed a crime" and violated his rights to due process. (Doc. 1 at 3-4 ¶ 13).

Count Two is for assault and battery. Count Three is for false imprisonment. Finally, Court Four is for the tort of outrage.

Pending before the court is a Motion for Summary Judgment (the "Motion") (Doc. 20) filed by Officer Orr on November 26, 2014. Officer Orr filed his supporting brief and evidentiary materials on this same date. (Doc. 21). Mr. Billingsley opposed the Motion on December 17, 2014. (Doc. 22). Officer Orr followed with his reply

---

official for actions he takes under color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* at 165-66, 105 S. Ct. at 3105 (citations omitted) (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 690 n.55, 98 S. Ct. 2018, 2035 n.55, 56 L. Ed. 2d 611 (1978)). In other words, a plaintiff in an action against a government official in his personal capacity can recover only against the official's personal assets. The assets of the governmental entity are not accessible. The reverse is true in an official capacity lawsuit. Furthermore, "to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.... [I]n an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Id.* 473 U.S. at 166, 105 S. Ct. at 3105 (citations omitted).

*Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1060 (11th Cir. 1992) (emphasis added). Mr. Billingsley makes no official policy or custom-based assertions. Further, nothing within his complaint suggests that he seeks to impose liability on any entity on account of Officer Orr's official acts.

(Doc. 24) on December 31, 2014. Accordingly, the Motion is under submission and, for the reasons explained below, is **GRANTED IN PART** and otherwise is **DENIED**.

## II.    FACTUAL BACKGROUND[2]

Officer Orr is a member of the Talladega Drug Task Force and was part of an anti-drug operation conducted on June 1, 2012. At 9:00 a.m. on that date, another agent, Jarred Tomlin ("Officer Tomlin"), received a tip by telephone call that James Pointer ("Mr. Pointer"), a known drug dealer, was selling drugs out of a white Dodge Durango near the corner of East Sloan Avenue and 19th Street in Talladega.

Officers Tomlin and Orr proceeded to the vicinity of 19th Street and spotted the white Durango with a couple of guys standing outside of it. Officers Tomlin and Orr tried to set up a surveillance spot, but lost sight of Mr. Pointer after they had circled the block in their vehicle.

Later on that same day, Officers Tomlin and Orr came across one of their informants who stated that she was supposed to buy some crack from Mr. Pointer

---

[2]  Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following factual background. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

who reportedly was getting the drugs ready for her at the Sunrise Apartments. Based upon this tip, Officers Tomlin and Orr went to the Sunrise Apartments and saw Mr. Pointer pull out from that residential area in the white Durango.

Officers Tomlin and Orr then ran Mr. Pointer's tag and name and learned that he had either a suspended or revoked driver's license. They decided to stop him for this offense, but when they turned on the blue lights to their vehicle, Mr. Pointer did not stop and, instead, drove away from them. An involved and dangerous vehicle chase ensued until Mr. Pointer crashed into two other cars and collided with a power pole.

Mr. Pointer then exited his vehicle and started running on foot. Eventually, Mr. Pointer caught up to Mr. Billingsley's vehicle at the intersection of East Street and Sloan Avenue. Mr. Pointer opened the rear driver-side door and got into Mr. Billingsley's car. Mr. Billingsley immediately put his car in park and exited the vehicle with his hands up above his head.

After raising his hands, Mr. Billingsley walked towards Officer Orr declaring that he did not know Mr. Pointer. As soon as Mr. Billingsley heard Officer Orr say "get on the ground," he adhered by lowering himself towards the ground. As Mr. Billingsley was moving his body to the ground in compliance with Officer Orr's command, Officer Orr struck him multiple times in the face and left side of the head.

After being hit multiple times by Officer Orr, Mr. Billingsley fell to the ground and Officer Orr put him in handcuffs.

Mr. Billingsley suffered a bloody nose. Mr. Billingsley and his brother (who had been a passenger in Mr. Billingsley's car at the time Mr. Pointer entered it) were handcuffed and detained for approximately two hours without any explanation as to why they were in handcuffs.

After being released at the scene, Mr. Billingsley went to the Emergency Room at the Citizens Baptist Medical Center. The findings from the x-ray of his facial bones showed that his septum was mildly deviated to the left, but that his sinuses were clear and that he did not have any fractures or bony destruction. Dr. Fred A. McLeod operated on Mr. Billingsley's nose on June 7, 2012.

## III.   STANDARDS

### A.   Summary Judgment

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R . Civ. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)).

Finally "[i]f the movant bears the burden of proof on an issue, because, as a defendant, it is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense." *International Stamp*, 456 F.3d at 1274 (citing *Martin v. Alamo Community College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003)).

### B.    Qualified Immunity

Officer Orr claims that qualified immunity bars Mr. Billingsley's federal constitutional claims brought against him in his personal capacity pursuant to § 1983 in Count One. (Doc. 21 at 27). "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (internal quotation marks omitted)

(quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003)). "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority." *Id*.

This is a two-part test. Under the first step, "the defendant must [prove that he or she was] performing a function that, but for the alleged constitutional infirmity, would have fallen within his legitimate job description." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). Next, the defendant must prove that he or she was "executing that job-related function." *Id.* at 1267. "Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." *Cottone*, 326 F.3d at 1358.[3]

Until 2009, the Supreme Court had required a two-part inquiry to determine the applicability of qualified immunity, as established by *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). Under the *Saucier* test, "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is whether

_____

[3] Mr. Billingsley contends within his opposition brief that Officer Orr acted outside the scope of his discretionary authority. (*See* Doc. 22 at 20 ("When viewing the facts as Plaintiff alleges, a reasonable juror can find that Defendant was not acting within the scope of his discretion when punching Plaintiff in the face and head.")). However, Mr. Billingsley offers no legal support for this contention and, in any event, the cases relied upon by Officer Orr in his initial brief (Doc. 21 at 27-28) unambiguously confirm that his challenged conduct, occurring while he was pursuing a known criminal suspect, comes under the umbrella of discretionary coverage.

[the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S. Ct. 2508, 2513,153 L. Ed. 2d 666 (2002).

If, under the plaintiff's allegations, the individual defendants would have violated a constitutional right, "the next, sequential step is to ask whether the right was clearly established." *Cottone*, 326 F.3d at 1358 (quoting *Saucier*, 533 U.S. at 201, 121 S. Ct. at 2156). The "clearly established" requirement is designed to assure that officers have fair notice of the conduct which is proscribed. *Hope*, 536 U.S. at 739, 122 S. Ct. at 2515. This second inquiry ensures "that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier*, 533 U.S. at 206, 121 S. Ct. at 2158.

The "unlawfulness must be apparent" under preexisting law.[4] *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987) (citing *Malley v. Briggs*, 475 U.S. 335, 344-45, 106 S. Ct. 1092, 1097-98, 89 L. Ed. 2d 271 (1986)). Therefore, a temporal requirement exists related to this inquiry. More particularly, a plaintiff must show that a reasonable public official would not have believed her actions to be lawful in light of law that was clearly established at the

---

[4] Only Supreme Court, Eleventh Circuit, and Alabama Supreme Court cases can "clearly establish" the law in this litigation. *See Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003) ("In this circuit, rights are 'clearly established' by decisions of the Supreme Court, this court, or the highest court of the state in which the case arose." (citing *Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.7 (11th Cir. 1996))).

time of the purported violation. *See Anderson*, 483 U.S. at 639,107 S. Ct. at 3038 ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' <u>at the time</u> it was taken[.]") (emphasis added) (citation omitted); *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 599, 160 L. Ed. 2d 583 (2004) ("If the law <u>at that time</u> did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.") (emphasis added); *Brosseau*, 543 U.S. at 198, 125 S. Ct. at 599 ("Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law <u>at the time</u> of the conduct.") (emphasis added); *see also Johnson v. Clifton*, 74 F.3d 1087, 1093 (11th Cir. 1996) ("We know of no [preexisting] case which might have clearly told Clifton that he could not take the disciplinary action indicated by an investigation which was initiated before he even knew about the allegedly protected speech, and in circumstances where the public concern implication was doubtful.").

However, the *Saucier* framework was made non-mandatory by the Supreme Court in *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009), in which the Court concluded that, "while the sequence set forth [in

9

*Saucier*] is often appropriate, it should no longer be regarded as mandatory." Thus, "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

Despite the Supreme Court's modification of *Saucier*'s analytical process, the substantive analysis remains unchanged; an officer is entitled to qualified immunity protection as long as he "could have believed" his conduct was lawful. *Hunter v. Bryan*, 502 U.S. 224, 227, 112 S. Ct. 534, 536, 116 L. Ed. 2d 589 (1991).Therefore, to deny immunity, a plaintiff must affirmatively demonstrate that "no reasonable competent officer would have" acted as the public official did. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986).

### C.    Evidentiary Rulings

"All evidentiary decisions are reviewed under an abuse-of-discretion standard." *See, e.g., General Elec. Co. v. Joiner*, 522 U.S. 136, 141, 118 S. Ct. 512, 517, 139 L. Ed. 2d 508  (1997). "An abuse of discretion can occur where the district court applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment." *United States v. Estelan*, 156 F. App'x 185, 196 (11th Cir. 2005) (citing *United States v. Brown*, 415 F.3d 1257, 1266 (11th

Cir. 2005)).

Moreover, as the Eleventh Circuit has made clear, not every incorrect evidentiary ruling constitutes reversible error:

> Auto-Owners' second argument is that it is entitled to a new trial on the basis of what it describes as a number of erroneous evidentiary rulings by the district court. Evidentiary rulings are also reviewed under an abuse of discretion standard. *Finch v. City of Vernon*, 877 F.2d 1497, 1504 (11th Cir. 1989). Moreover, even if Auto-Owners can show that certain errors were committed, the errors must have affected "substantial rights" in order to provide the basis for a new trial. *See* Fed. R. Evid. 103(a). "Error in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties." *Perry*, 734 F.2d at 1446. *See also Allstate Insurance Co. v. James*, 845 F.2d 315, 319 (11th Cir. 1988).

*Haygood v. Auto-Owners Ins. Co.*, 995 F.2d 1512, 1515 (11th Cir. 1993). Therefore, even the existence of many evidentiary errors does not guarantee the party appealing a new trial. Instead, such erroneous rulings by a district court must "affect the substantial rights of the parties" for reversible error to occur.

## IV.   ANALYSIS

### A.   Mr. Billingsley's Federal Claims Asserted Under Count One

#### 1.   Preliminary Considerations

Both in his complaint and in his opposition, Mr. Billingsley makes it clear that he is pursing a "Fourth Amendment right to be free from unreasonable searches and seizures" and that his excessive force claim springs from the injuries caused by

Officer Orr's "use of force during th[is] unreasonable search and seizure." (Doc. 22 at 8); (*see also* Doc. 1 at 3-4 ¶¶ 13-14 (describing Mr. Billingsley's physical injuries from use of force as flowing from Officer Orr's violation of his "Fourth Amendment rights against an unreasonable search and seizure")). The Eleventh Circuit has explained the distinction between the use of excessive force during the course of an illegal stop as opposed to such a claim arising out of a legal detention by law enforcement:

> As their first theory, Plaintiffs assert that because there was no basis for the stop and no governmental interest at stake, any use of force, however minimal, was more than reasonably necessary and excessive. Under this Circuit's law, however, a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim. *See Williamson v. Mills*, 65 F.3d 155, 158-59 (11th Cir. 1995) (holding that a claim that any force during a false arrest is excessive is subsumed in the false arrest claim itself because damages for false arrest include damages for use of force to effect that false arrest). However, as outlined below, a claim for excessive force during a legal stop or arrest is a discrete claim.
>
> *Williamson*'s rule makes sense because if a stop or arrest is illegal, then there is no basis for any threat or any use of force, and an excessive force claim would always arise but only collaterally from the illegal stop or arrest claim. The correct analysis is that the excessive force claim is subsumed in the illegal stop or arrest claim, as recognized in *Williamson*, where a plaintiff contends the force was excessive because there was no basis for any force.

*Jackson v. Sauls*, 206 F.3d 1156, 1170-71 (11th Cir. 2000) (footnote omitted) (emphasis added).

The Eleventh Circuit's decision in *Williamson* (as reinforced by *Jackson*) means that Mr. Billingsley's excessive force claim is subsumed by his illegal seizure one. Put differently, <u>as shaped by his pleading and as reasserted in his briefing</u>,[5] Mr. Billingsley has no pending independent claim for excessive force and summary judgment in Officer Orr's favor on any such purported discrete excessive force claim is appropriate as foreclosed by *Williamson*. *See Williamson*, 65 F.3d at 159 ("Under these circumstances, Williamson's excessive force claim is subsumed in his false arrest claim, and thus we find no reversible error in the district court's grant of summary judgment on the excessive force claim as a discrete claim.").[6] Consequently,

---

[5] Undoubtedly, Mr. Billingsley could have included a separate count for Fourth Amendment excessive force against Officer Orr on these facts, but, for whatever reason, he chose not to do so and he is the master of his complaint. Moreover, the Eleventh Circuit has made it clear that it is procedurally inappropriate for a party to attempt to amend a pleading in any critical manner by way of briefing on summary judgment in the absence of that litigant also seeking leave to amend. *See, e.g., Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996))); *Flintlock Const. Servs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1228 (11th Cir. 2013) ("This court's precedent foreclosed Well–Come's attempt to amend its complaint at the summary judgment stage without seeking leave of court pursuant to Rule 15(a)(2)."); *Flintlock*, 710 F.3d at 1227 (criticizing district courts for practice of "ignor[ing] what the respective parties alleged in their complaint and answer and to [instead] consider their claims and defenses as depicted in the memoranda they filed in support of or in opposition to a motion for summary judgment").

[6] The district court in *Williamson* had actually analyzed the use of excessive force as an independent claim. In affirming the entry of summary judgment on different grounds, the Eleventh Circuit reasoned that the "damages recoverable on Williamson's false arrest claim include damages suffered because of the use of force in effecting the arrest." 65 F.3d at 158 (citing *Hamm v. Powell*, 874 F.2d 766, 770 (11th Cir. 1989)).

the court now turns to an analysis of whether Mr. Billingsley's only remaining federal claim against Officer Orr for illegal search and seizure arising under the Fourth Amendment is viable.[7]

### 2.     Mr. Billingsley's Illegal Search and Seizure Claim

### a.     Officer Orr did not violate Mr. Billingsley's Fourth Amendment rights in executing a *Terry* stop.

Here, Officer Orr never formally placed Mr. Billingsley under arrest or charged him with a crime. However, "[i]t is quite plain that the Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime—'arrests' in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v. Ohio*, 392 U.S. 1, 16, 88 S. Ct. 1868, 1877, 20 L. Ed. 2d 889 (1968).

Under the Supreme Court's *Terry* decision, a different and less demanding constitutional standard applies when evaluating the Fourth Amendment lawfulness of an officer's seizure of a person for questioning in the absence of having probable

---

[7] The court acknowledges that Mr. Billingsley's complaint makes a passing reference to his federal due process rights in Count One. However, in his opposition brief he omits any discussion of the Fifth Amendment and focuses exclusively upon his Fourth Amendment rights. Consequently, to the extent his complaint contains any purported due process violation, Mr. Billingsley has abandoned it. *See* collection of cases cited *infra* at 23-24.

cause to formally arrest him. As the Eleventh Circuit explained in *United States v. Powell*, 222 F.3d 913, 916-17 (11th Cir. 2000):

> Under *Terry v. Ohio*, 392 U.S. 1 (1968), in evaluating the constitutionality of an investigatory stop, the court must examine "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." 392 U.S. at 20, 88 S. Ct. at 1879. Under *Terry*, law enforcement officers may detain a person briefly for an investigatory stop if they have a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity. The "reasonable suspicion" must be more than an "inchoate and unparticularized suspicion or hunch." The officer must have "some minimal level of objective justification" taken from the totality of the circumstances.

*Powell*, 222 F.3d at 917 (parallel references and some internal citations omitted).

In upholding the constitutionality of the *Terry* stop in *Powell*, the Eleventh Circuit drew from the Supreme Court's decision in *Illinois v. Wardlow*, 528 U.S. 119, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000). There, the Supreme Court explained that an evaluation of the reasonable articulable suspicion standard requires a common sense approach:

> In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.

*Wardlow*, 528 U.S. at 124-25, 120 S. Ct. at 676 (citing *United States v. Cortez*, 449

U.S. 411, 418, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621 (1981)). Therefore, the key constitutional question is whether, under the facts in the light most favorable to Mr. Billingsley, Officer Orr had a reasonable articulable suspicion to stop him.

The court concludes that, even based on Mr. Billingsley's version of the facts, the lesser constitutional standard of reasonable articulable suspicion existed for Officer Orr to make a *Terry* stop. These fluid circumstances include Mr. Pointer's jumping into Mr. Billingsley's car in an effort to further elude his arrest after a dangerous vehicle chase which reasonably triggered the need for law enforcement to stop Mr. Billingsley and verify whether he was possibly an accomplice of Mr. Pointer.

> **b.   Alternatively, qualified immunity protects Officer Orr from any personal liability for an unconstitutional *Terry* stop of Mr. Billingsley.**

Alternatively, the court finds that even if Officer Orr lacked a reasonable suspicion to stop Mr. Billingsley, he is still entitled to prevail on his qualified immunity defense. This is the case because, at minimum, he had an "arguable" reasonable suspicion to make the stop. *See Williamson*, 65 F.3d at 157 (holding that when an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether officer had arguable reasonable suspicion to

support an investigatory stop); *see also Jackson*, 206 F.3d at 1165-66 ("A law enforcement official <u>who reasonably but mistakenly</u> concludes that reasonable suspicion is present is still entitled to qualified immunity.") (emphasis added).

Given this arguable reasonable suspicion framework, the court finds that Mr. Billingsley has not carried his burden of demonstrating that Officer Orr had fair and clear warning that his stopping and seizing Mr. Billingsley for questioning at the scene after Mr. Pointer, a fleeing suspect, had jumped into Mr. Billingsley's car, violated clearly established Fourth Amendment law.[8] *See Santamorena v. Georgia Military College*, 147 F.3d 1337, 1340 (11th Cir. 1998) ("To overcome this immunity, Plaintiff has the burden of pointing to case law which 'pre-date[s] the offic[ial]'s alleged improper conduct, involve[s] materially similar facts, and 'truly compel[s]' the conclusion that the plaintiff had a right under federal law.'" (quoting *Ensley v. Soper*, 142 F.3d 1402, 1406 (11th Cir. 1998))).

As it concerns Mr. Billingsley's briefing more particularly, he does not contend much less attempt to show that Officer Orr's conduct in executing a *Terry* stop meets that narrow category of obvious clarity cases due to its flagrant egregiousness. *See Santamorena*, 147 F.3d at 1340 n.6 ("[T]hese exceptional cases <u>rarely</u> arise.")

---

[8]  Mr. Billingsley is the party who bears the burden on this qualified immunity issue as Officer Orr was undoubtedly cloaked with discretionary authority in making the *Terry* stop as explained in n.3, *supra*.

17

(emphasis added); *cf. Rodriguez v. Farrell*, 280 F.3d 1341, 1350 n.18 (11th Cir. 2002) ("We very occasionally encounter the exceptional case in which a defendant officer's <u>acts are so egregious</u> that preexisting, fact-specific precedent was not necessary to give clear warning to every reasonable . . . officer that what the defendant officer was doing must be 'unreasonable' within the meaning of the Fourth Amendment.") (emphasis added).

As for those authorities he does reference, Mr. Billingsley's opposition focuses unhelpfully upon inapposite civil rights decisions in which either an excessive force claim was squarely alleged separately from the wrongful detention or arrest count or in which the plaintiff did not contest the legality of the stop or arrest. *See, e.g., Graham v. Connor*, 490 U.S. 386, 388, 109 S. Ct. 1865, 1868, 104 L. Ed. 2d 443 (1989) ("In this action under 42 U.S.C. § 1983, petitioner Dethorne Graham seeks to recover damages for injuries allegedly sustained when law enforcement officers used physical force against him during the course of an investigatory stop."); *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) ("After thorough review, we conclude that Ferraro is entitled to qualified immunity on Lee's wrongful arrest claim, but hold that the police officer is plainly not entitled to qualified immunity on the excessive force claim."); *Bell v. City of York*, No. 7:09–CV–0694–SLB, 2013 WL 1352022, at *20, *22 (N.D. Ala. Mar. 29, 2013) (analyzing federal unlawful arrest and excessive

force claims as separately pleaded counts); *Warren v. City of Birmingham*, No. 2:09-CV-1025-JHE, 2013 WL 3994532, at *4 (N.D. Ala. July 31, 2013) (summarizing remaining counts of civil rights complaint, including a discrete one for excessive force); *S.S. ex rel. Montgomery v. Bolton*, 522 F. App'x 452, 455 n.4 (11th Cir. 2013) ("The search and seizure and excessive force claims are separate, and Bolton in entitled to qualified immunity on the search and seizure claim exclusive of the excessive force claim."); *Bolton*, 522 F. App'x at 453 (listing counts of civil rights complaint, including a discrete one for excessive force).

However, as explained above, Mr. Billingsley's lawsuit does not involve a discrete excessive force claim, but, instead, as driven by the Eleventh Circuit's binding opinion in *Williamson*, only a derivative, damages-related one. Further, none of the cases cited by him establishes that Officer Orr acted in violation of clearly established law in stopping and detaining Mr. Billingsley at the scene for questioning. Consequently, for all these reasons, qualified immunity protects Officer Orr from any individual liability relating to Mr. Billingsley's federal search and seizure claim (and, therefore, also his dependent claim of damages tied to Officer Orr's use of excessive force during that seizure), and the Motion is **GRANTED** as to Count One of Mr. Billingsley's complaint.

19

B.    **Mr. Billingsley's State Law Claims**

1.    **Count Two–Assault and Battery**

The court reaches a different conclusion concerning Mr. Billingsley's assault

and battery claim arising under Alabama law. Officer Orr's sole defense to this count

is premised upon state agent immunity.[9] The court rejects this affirmative defense

based upon the same persuasive reasoning employed by the unpublished Eleventh

Circuit panel in *Bolton*.

> Regarding S.S.'s assault and battery claim, Bolton contends he is
> entitled to state agent immunity under Alabama Code § 6–5–338 (1975).
> A state agent is not immune from civil liability, "when the State agent
> acts willfully, maliciously, fraudulently, in bad faith, beyond his or her
> authority, or under a mistaken interpretation of the law." *Ex parte
> Cranman*, 792 So.2d 392, 405 (Ala. 2000). <u>S.S.'s version of the facts
> supports that Bolton acted willfully in hitting him in the head with a
> gun, while he was not resisting arrest. Bolton merely quibbles with
> S.S.'s view of the facts, rather than showing that state agent immunity
> would apply even if we view S.S.'s facts as true</u>. Therefore, the district
> court did not err in denying state agent immunity to Bolton on S.S.'s
> assault and battery claim.

522 F. App'x at 454-55 (emphasis added).

Comparable to the defendant in *Bolton*, Officer Orr ineffectively "quibbles"

with Mr. Billingsley's version of the facts and does not demonstrate how state agent

---

[9]  Officer Orr references "Ala. Code 1975 § 6-5-638" as a separate police immunity defense to Mr. Billingsley's assault and battery claim. (Doc. 21 at 22). The court has not been able to find such a statutory section and believes that this is probably just an incorrect citation to § 6-5-338–Alabama's state agent immunity statute–the application of which is discussed below.

immunity should apply to him given a view of the record in a light most favorable to

Mr. Billingsley–he was not resisting Officer Orr's commands and, nonetheless,

Officer Orr struck him several times causing his nose to bleed, deviating his septum,

and resulting in him having to undergo nose surgery. Instead, Officer Orr implores

this court to find Mr. Billingsley and his sworn testimony to be incredible as a matter

of law due to what Officer Orr deems to be an absence of sufficient corroborating

evidence coupled with a plethora of seemingly contradictory proof. (*See, e.g.*, Doc.

24 at 6 ("The Defendant urges that the only evidence produced by the Plaintiff that

he was complying with the instructions given by the Defendant to get down on the

ground is the testimony of the Plaintiff, testimony that is contradicted by the affidavit

of testimony of James Pointer and Lee Green, both Plaintiff's witnesses.")). However

credibility determinations are exclusively the jury's province and nothing offered by

Officer Orr convinces this court to accept his invitation to invade it on summary

judgment. *See, e.g., United States v. Calderon*, 127 F.3d 1314, 1325 (11th Cir. 1997)

("It is well established that "[c]redibility determinations are the exclusive province

of the jury." (quoting *United States v. Parrado*, 911 F.2d 1567, 1571 (11th Cir. 1990),

*cert. denied*, 498 U.S. 1104, 111 S. Ct. 1005, 112 L. Ed.2d 1088 (1991))).

Officer Orr also fails to address the substance of the *Bolton* decision in his

reply, even though:  (1) he has a separate section within his reply brief entitled

21

"**Cases Cited by Plaintiff**" (Doc. 24 at 11-12); and (2) *Bolton* is a critical case upon which Mr. Billingsley relies in his opposition to this (Doc. 22 at 27-29) and other summary judgment issues. Under such circumstances, Officer Orr has not carried his burden on summary judgment concerning his state agent immunity defense to Count Two, and that portion of his Motion is **DENIED**.

### 2.    Count Three–False Imprisonment

The Motion does not ever separately address the merits of or discuss any affirmative defense to Mr. Billingsley's false imprisonment claim. (*See* Doc. 22 at 27 ("Defendant argues that summary judgment should be granted in his favor on Count II and Count IV of Plaintiff's Complaint.")). Nonetheless, the Motion purports to seek summary judgment on Mr. Billingsley's entire case. Accordingly, to the extent that Officer Orr demands a dismissal of Count Three, the Motion is **DENIED**.

### 3.    Count Four–Tort of Outrage

As the *Bolton* panel explained in affirming the district court on its dismissal of the plaintiff's outrage claim under a very comparable fact scenario:

> For the tort of outrage under Alabama law, a plaintiff must establish the defendant's conduct "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Harrelson v. R.J.*, 882 So. 2d 317, 322 (Ala. 2003). From our review of the record, S.S. failed to provide evidence through testimony or medical records of "emotional distress so severe that no reasonable person could be

> expected to endure it." Thus, there is no genuine issue of material fact,
> and the district court erred in failing to grant Bolton summary judgment
> on this claim.

*Bolton*, 522 F. App'x at 455-56. Persuaded by *Bolton* as well as those cases cited by

Officer Orr (Doc. 21 at 25-27), the court concludes that no reasonable jury could

return a verdict in favor of Mr. Billingsley on the tort of outrage even if all of the

facts favorable to him were believed by the jurors to be true.

Moreover, Mr. Billingsley offers no challenge to the dismissal of his outrage

claim within his opposition brief. (*See* Doc. 22 at 27-30 (limiting discussion within

brief's state law section to his assault and battery claim)). Consequently, Mr.

Billingsley has waived his right to pursue tort of outrage as he has offered nothing to

substantiate its validity. *See, e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322

(11th Cir. 2001) (finding claim abandoned when argument not presented in initial

response to motion for summary judgment); *Bute v. Schuller International, Inc.,* 998

F. Supp. 1473, 1477 (N.D. Ga. 1998) (finding unaddressed claim abandoned); *see*

*also Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d

1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is

sufficient to find the issue has been abandoned); *Resolution Trust Corp. v. Dunmar*

*Corp.,* 43 F.3d 587, 599 (11th Cir. 1995); *Hudson v. Norfolk Southern Ry. Co.,* 209

F. Supp. 2d 1301, 1324 (N.D. Ga. 2001); *cf. McMaster v. United States,* 177 F.3d

936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment").

Thus, consistent with the above reasoning, the Motion is **GRANTED** on Count Four of Mr. Billingsley's complaint.

### C.    Officer Orr's Evidentiary Objection

Buried within Officer Orr's reply is an objection to some of the evidence upon which Mr. Billingsley relies in opposition to the Motion. (Doc. 24 at 1-2). More specifically, Officer Orr contends that this court should disregard the affidavit of eyewitness, Lazreth Tywman, when evaluating the merits of the Motion. *Id.* This objection should have been presented to the court in the form of a motion so that the issue could be fully briefed by the parties consistent with the requirements of Appendix III to the Uniform Initial Order (Doc. 4) entered on July 19, 2013.

Instead, all the court has unhelpfully before it is one party's position. Consequently, the objection is **OVERRULED** as procedurally defective. *Cf. Robinson v. Section 23 Property Owner's Ass'n*, No. 2:12–CV–675–FtM–29CM,

2014 WL 2215757, at *1 n.1 (M.D. Fla. May 28, 2014) ("Any requests for relief buried in responses to motions or not otherwise properly before the Court may be stricken.").

Alternatively, the objection is **TERMED** as **MOOT**. More specifically, even when disregarding the challenged evidence and the dispute over whether Officer Orr hit a compliant and non-aggressive Mr. Billingsley with his gun or his fist, the court's rulings on the Motion remain unchanged as they are all sufficiently substantiated by other parts of the record, including Mr. Billingsley's deposition testimony.

## V.    CONCLUSION

The Motion is **GRANTED** as to Counts One and Four only and is otherwise **DENIED**. Further, Officer Orr's evidentiary objection is **DENIED**. Alternatively, the evidentiary issue is **TERMED** as **MOOT**. Finally, by separate order, the court will set this case for a final pretrial conference.

**DONE** and **ORDERED** this 13th day of January, 2015.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

25